UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

GENERAL CASUALTY INSURANCE
COMPANY,
         Plaintiff,

v.

REND LAKE RESORT, INC., and SHARON
S. NOLTE,
         Defendants.

Case No. 3:16-cv-00287-JPG-SCW

## MEMORANDUM & ORDER

**J. PHIL GILBERT, DISTRICT JUDGE**

This matter comes before the Court on the parties' cross motions for summary judgment. Defendant Sharon Nolte filed a motion for summary judgment (Doc. 57) and plaintiff General Casualty Insurance Company filed a timely response (Doc. 61). Plaintiff General Casualty Insurance Company also filed a motion for summary judgment (Doc. 58) and defendant Sharon Nolte filed a timely response (Doc. 62).

### I. BACKGROUND

Rend Lake Resort, Inc. ("Rend Lake") operated a hotel and resort in Southern Illinois for 27 years. The resort was open year-round and had 104 rooms, a restaurant, a conference center, a gift shop, a bait shop, and a fish cleaning station. In July 2014, defendant Sharon Nolte was a guest at the resort. Nolte alleges that while she was a guest, she suffered severe and permanent injuries when she slipped and fell on a set of stairs that was slick with dead bugs. In September 2014, Nolte filed a claim for damages with Rend Lake for her injury. Rend Lake forwarded the claim to its insurance agent: Downing Insurance ("Downing"). Downing then forwarded the claim to Rend Lake's insurer: General Casualty Insurance Company (General Casualty).

1

General Casualty investigated the claim and, on June 23, 2015, issued a letter to both Downing and Nolte's attorney stating that Rend Lake was not liable for Nolte's injuries.

One week later on June 29, 2015, Nolte filed a negligence claim against Rend Lake in Illinois state court for damages stemming from the alleged accident. John Reilly, the owner and president of Rend Lake, received a copy of the complaint and forwarded it to Robert Davey, the chief accountant of the resort. Davey, however, "did not forward the summons or complaint from the Nolte Lawsuit . . . to Downing Insurance or General Casualty at that time." (Davey Decl. Ex. A, at ¶ 10, ECF No. 59.) In fact, Davey did not contact Downing or General Casualty about the suit until December 22, 2015—36 days after the Illinois state court entered default judgment against Rend Lake (November 16, 2015) and awarded Nolte $300,000. Reilly admitted that Davey "dropped the ball" on this matter. (Reilly Dep. Ex. C, at 27:5–13, ECF No. 59.)

Once General Casualty received notice of the default judgment, they sent a letter to Rend Lake stating that they had retained counsel in order to attempt to vacate the default judgment. General Casualty also stated, however, that it was reserving its right to deny coverage if the effort to vacate was not successful. General Casualty's position that it could deny coverage derived from the notice conditions in its policy agreement with Rend Lake (the "policy"), which General Casualty claimed that Rend Lake violated. The pertinent section provides:

> a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:
> > (1) How, when and where the "occurrence" or offense took place;
> > (2) The names and addresses of any injured persons and witnesses; and
> > (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.
>
> **b. If a claim is made or "suit" is brought against any insured, you must**:
> > (1) Immediately record the specifics of the claim or "suit" and the date received; and
> > **(2) Notify us as soon as practicable.**

2

> **You must see to it that we receive written notice of the claim or "suit" as soon as practicable.**
>
> **c. You and any other involved insured must:**
> **(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";**
> (2) Authorize us to obtain records and other information;
> (3) Cooperate with us in the investigation, settlement or defense of the claim or "suit"; and
> (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

(Compl. Ex. 2, at 13) (emphasis added).

General Casualty's counsel then fought the default judgment. The Illinois trial court denied the petition to vacate the default judgment and the appellate court affirmed the trial court's decision. (Scott Decl. Ex. E, at ¶ 21–22, ECF No. 59; Cunningham Decl. Ex. F, at ¶ 12–13, ECF No. 59.) General Casualty then filed suit in this Court—properly invoking the Court's diversity jurisdiction—seeking a declaratory judgment that General Casualty has no obligation under the policy to defend or indemnify Rend Lake in relation to the Nolte lawsuit because Rend Lake violated the notice provisions of the policy. General Casualty now asks the Court for summary judgment on the grounds that they were substantially prejudiced due to Rend Lake's failure to provide notice of the lawsuit prior to the entry of the default judgment. Nolte has also moved for summary judgment, but on the grounds that General Casualty had an opportunity to investigate the claim prior to the initiation of Nolte's lawsuit in Illinois state court.

## II. LEGAL STANDARDS

*i. Summary Judgment*

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); see *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels*

*Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). A court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008); *Spath*, 211 F.3d at 396.

The initial summary judgment burden of production is on the moving party to show the Court that there is no reason to have a trial. *Celotex*, 477 U.S. at 323; *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013). If the moving party bears the burden of persuasion on an issue at trial, it must "lay out the elements of the claim, cite the facts which it believes satisfies these elements, and demonstrate why the record is so one-sided as to rule out the prospect of a finding in favor of the non-movant on the claim." *Hotel 71 Mezz Lender LLC v. National Ret. Fund*, 778 F.3d 593, 601 (7th Cir. 2015); *accord Felix v. Wisconsin Dep't of Transp.*, 828 F.3d 560, 570 (7th Cir. 2016). Where the moving party fails to meet its strict burden, a court cannot enter summary judgment for the moving party even if the opposing party fails to present relevant evidence in response to the motion. *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992).

In responding to a motion for summary judgment, the nonmoving party may not simply rest upon the allegations contained in the pleadings, but must present specific facts to show that a genuine issue of material fact exists. *Celotex*, 477 U.S. at 322–26; *Anderson*, 477 U.S. at 256–57; *Modrowski*, 712 F.3d at 1168. A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts". *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson*, 477 U.S. at 252.

> *ii.    Notice conditions under Illinois law*

The central issue in this case is whether the late notice of the Nolte lawsuit to General Casualty was unreasonable under the notice conditions of the contract as a matter of law. Whether a party served notice unreasonably late is generally a question of fact under Illinois law, but the Court may treat it as a question of law when there are no material facts in dispute. *Northbrook Prop. & Cas. v. Applied Sys.*, 313 Ill.App.3d 457, 246 Ill.Dec. 264, 729 N.E.2d 915, 921 (2000). Notice conditions are critical parts of insurance contracts because if the insurer does not receive notice of a lawsuit, they cannot timely defend the claims against the insured. *Zurich Ins. Co. v. Walsh Constr. Co. of Ill. Inc.*, 352 Ill.App.3d 504, 287 Ill.Dec. 834, 816 N.E.2d 801, 805 (2004). If a party does not comply with a notice provision, then the insurer is not required to defend or indemnify the insured. *Id.* at 921, 729 N.E.2d at 920–21; *N. Ins. Co. of N.Y. v. City of Chi.*, 325 Ill.App.3d 1086, 259 Ill.Dec. 664, 759 N.E.2d 144, 149 (2001). Illinois courts consider five factors when determining whether the delay in notice was reasonable: "(1) the specific language of the policy's notice provision; (2) the insured's sophistication in commerce and insurance matters; (3) the insured's awareness of an event that may trigger insurance coverage; (4) the insured's diligence in ascertaining whether policy coverage is available; and (5) prejudice to the insurer." *W. Am. Ins. Co. v. Yorkville Nat. Bank*, 238 Ill. 2d 177, 185–86, 939 N.E.2d 288, 293–94 (2010).

## III.    ANALYSIS

Viewing the facts in the light most favorable to Nolte, the five factors necessitate entering summary judgment for General Casualty. First, the specific language of the policy states that Rend Lake must "[n]otify [General Casualty] as soon as practicable" after a suit is brought and "[i]mmediately send [General Casualty] copies of any demands, notices, summonses or legal papers received in connection with the claim or 'suit'". (Compl. Ex. 2, at 13.) Rend Lake

markedly failed to do so, considering they did not notify General Casualty of the suit until nearly six months after the suit was brought and 36 days after the trial court entered the default judgment. Second, Rend Lake was sophisticated in commerce and insurance matters given the scale of its operation: the resort had over 100 rooms and numerous recreation areas. Moreover, Reilly—a successful businessman—owned and ran the resort for 27 years before it closed in December of 2016. (Reilly Dep. Ex. C, at 8:2–19, ECF No. 59.) Third, Rend Lake was aware of the event that may trigger coverage—Nolte's slip and fall—because they forwarded Nolte's initial 2014 claim for damages to Downing.

Fourth, Rend Lake showed no diligence in notifying General Casualty of Nolte's lawsuit. Nolte served Rend Lake with process in the suit on June 22, 2015, yet Rend Lake's management failed to forward the summons or complaint to Downing or General Casualty. On September 16, 2015, when Nolte's counsel sent correspondence to Rend Lake enclosing a motion for default judgment, Rend Lake failed to notify Downing or General Casualty. On November 3, 2015, when Reilly received a notice of hearing for default, Rend Lake failed to notify Downing or General Casualty. On December 15, 2015, when Davey received a letter from Nolte's counsel which enclosed a copy of the November 15 default judgment, Rend Lake failed to notify Downing or General Casualty. Rend Lake did not notify Downing or General Casualty about any of these matters until December 22, 2015—36 days after the trial court entered the default judgment.

Finally, the late notice substantially prejudiced General Casualty because it deprived them from the opportunity to defend the suit. It would be manifestly unfair to require General Casualty to indemnify Rend Lake on a matter that General Casualty contractually should have had an opportunity to defend in the first place, but-for Rend Lake's failures here.

As a final matter, Nolte's position in her motion for summary judgment is incorrect. First, General Casualty did not have notice of the Nolte lawsuit. General Casualty received notice of Nolte's 2014 claim for damages—which it promptly investigated and denied—but it never received notice of Nolte's 2015 lawsuit—the claim at issue today. Moreover, Nolte defeated her own motion for summary judgment by claiming that the question of prejudice to General Casualty should be "one for the jury to decide". If prejudice here was a question for the jury to decide, then Nolte would not be entitled to summary judgment in the first place.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** defendant Sharon Nolte's motion for summary judgment (Doc. 57) and **GRANTS** plaintiff General Casualty Insurance Company's motion for summary judgment (Doc. 58). The Clerk is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**
**DATED: September 20, 2017**

**s/ J. Phil Gilbert**
**J. PHIL GILBERT**
**DISTRICT JUDGE**
